**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**BOURGEAULT CONSULTING GROUP,**

                                  **Plaintiff**                         **13-CV-0616S(Sr)**

**v.**

**JOHN L. COOK,**

                                  **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #7.

Currently before the Court is plaintiff's motion to amend its complaint to add The Interpublic Group of Companies ("IPG"), as a defendant and to remand this action to New York State Supreme Court, Erie County, for lack of diversity subsequent to the amendment. Dkt. #6. For the following reasons, it is recommended that plaintiffs' motion to amend its complaint be granted in part and that this matter be remanded to state court for lack of diversity jurisdiction.

## BACKGROUND

Bourgeault Consulting Group ("BC Group"), is one of only a handful of companies in the United States which services and supports Khalix/Longview ("Khalix"), a business management and accounting software. Dkt. #6-2, ¶ 18. BC Group's principal place of business is in Kenmore, New York. Dkt. #6-2, ¶ 2.

BC Group hired John L. Cook, a resident of Rhode Island, as a Khalix software consultant in 2007.  Dkt. #6-2, ¶¶ 3 & 20.  On May 8, 2009, Mr. Cook entered into a non-competition and confidentiality agreement ("agreement"), with BC Group. Dkt. #6-2, pp.32-33.  The agreement prohibits Mr. Cook from using or exploiting BC Group's confidential business information and from soliciting BC Group's clients while employed at BC Group and during the twelve month period following his departure from BC Group.  Dkt. #6-2, ¶ 24.

In November of 2010, BC Group entered into a contract with IPG to provide Khalix business management and accounting software consulting services. Dkt. #6-2, ¶¶ 25.  IPG's principal place of business is in New York, New York.  Dkt. #6-2, ¶ 12.  Mr. Cook was assigned to IPG's account full time.  Dkt. #6-2, ¶ 27.  IPG was one of BC Group's largest clients.  Dkt. #6-2, ¶ 26.

While employed by BC Group and assigned to IPG's account, Mr. Cook established Moonstone Works, LLC ("Moonstone"), a Khalix consulting company.  Dkt. #6-2, ¶ 29.  Moonstone's website listed BC Group's clients as its own clients.  Dkt. #6-2, ¶ 33.  Mr. Cook forwarded confidential client and customer information obtained through his employment with BC Group to his e-mail account at Moonstone.  Dkt. #6-2, ¶ 36.

By e-mail dated August 21, 2012, IPG's Director of Corporate Human Resources informed Lisa Hamilton, one of BC Group's primary contacts at IPG, that:

> As a follow up to our conversation, if John Cook decides to leave his firm and joins one of our primary firms like Diversant. [sic] They can arrange a corp to corp if he is incorporated.  For example if you want to pay him $90 hourly your bill rate will be $105 hourly.  If W2 bill rate $115 hourly.
>
> If John contacts Diversant our Account manager is Allison Paulino . . .

> We normally do a 6mos contract assignment . . . .
>
> When John contacts Allison Paulino she will work with Paul Hope to make the final arrangements.

Dkt. #6-2, ¶ 80 & p.43.

On August 30, 2012, IPG entered into a contract with Moonstone to provide Khalix consulting services to IPG at a lower hourly rate than IPG was paying BC Group.  Dkt. #6-2, ¶¶ 46 & 48.  Subsequent to the execution of the contract between Moonstone and IPG, Mr. Cook notified BC Group that he would be leaving BC Group to pursue a career in web development.  Dkt. #6-2, ¶ 49.  Mr. Cook's last day of employment with BC Group was Friday, September 7, 2012.  Dkt. #6-2, ¶ 49.  Mr. Cook began providing Khalix consulting services to IPG through Moonstone as of Monday, September 10, 2012.  Dkt. #6-2, ¶ 51.  IPG declined to renew its contract with BC Group in October, 2012.  Dkt. #6-2, ¶ 52.

BC Group discovered that Mr. Cook was working as a consultant providing service and support for IPG's Khalix software in November, 2012.  Dkt. #6-2, ¶ 53 & Dkt. #9-1, p.55.  By e-mail dated December 5, 2012, BC Group advised Mr. Cook that it had

> received confirmation the other day that you are actively working for IPG and contracting through another staffing firm.  If you recall, all employees signed a non-solicitation/non-compete back in 2009 to protect the company and each individual resource from having an ex-employee turn around and compete to provide the services we provide surrounding Longview's applications to any of our clients (past and present).  Your employment at IPG is in direct violation of this agreement.
>
> I also saw your blog on moonstoneworks.com and was taken aback that you have been blogging since February 2011 with the intent to create a following for your services unbeknownst to me and other BC Group members.

> Furthermore, the blog goes on to detail things that you are working on and who you are working for without ever mentioning that the work is being done by BC Group. The blog requests that if there is any interest in said services to contact you, not BC Group, for more information. As with the agreement mentioned above, this blog is a form of solicitation with the intent to generate demand for YOUR services, which is a violation of the non-solicitation/non-compete agreement.
>
> Why would you not have contacted me about the work at IPG? I was in talks with Lisa to supply a resource to her back in September only to find out that you were back there shortly after you left BC Group for reasons to pursue non-khalix/Longview work.

Dkt. #9-1, pp.62-63.

Plaintiff commenced this action in New York State Supreme Court, Erie County, on December 19, 2012, asserting breach of contract, breach of fiduciary duty, unfair competition by misappropriation, intentional interference with prospective business advantage and intentional interference with business relations against Mr. Cook. Dkt. #1.

Mr. Cook commenced employment as a Senior Programmer/Analyst at IPG effective February 25, 2013. Dkt. #9-1, p.59.

On or about May 16, 2013, plaintiff served subpoenas upon IPG and Diversant, LLC ("Diversant"), seeking all email communications and any documents relating to negotiations, contracts and payments between IPG/Diversant and Mr. Cook/Moonstone. Dkt. #6-2, pp.45 & 48.

On June 14, 2013, following receipt of plaintiff's settlement demand in excess of $75,000, Mr. Cook removed the action to this Court based on the parties' diversity of citizenship. Dkt. #1, p.42.

BC Group received IPG's response to the subpoena on July 15, 2013. Dkt. #6-2, p.4. On August 13, 2013, plaintiff moved to amend its complaint to add IPG as a defendant and assert the following claims against it: aiding and abetting breach of fiduciary duty; misappropriation of BC Group's confidential/trade secret information; misappropriation of BC Group's efforts, resources, expenditures, labor and goodwill; permanent injunction to enforce the terms of defendant Cook's employment agreement; and tortious interference with the agreement between BC Group and Cook. Dkt. #6-2. Plaintiff's proposed amended complaint also names Mr. Cook as a defendant to the claims of misappropriation of BC Group's confidential/trade secret information; misappropriation of BC Group's efforts, resources, expenditures, labor and goodwill; and permanent injunction to enforce the terms of defendant Cook's employment agreement. Dkt. #6-2.

## DISCUSSION AND ANALYSIS

28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." District courts enjoy broad discretion in this determination. *Vanderzalm v. Sechrist Indus., Inc.*, 875 F. Supp.2d 179, 183 (E.D.N.Y. 2012).

As an initial matter, the Court must evaluate whether the joinder of an additional defendant is permissible under Rule 20 of the Federal Rules of Civil Procedure. *Id.* Rule 20 states that defendants may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Plaintiff's proposed amended complaint satisfies Rule 20 as it alleges common questions of law and fact relating to Mr. Cook's termination of employment with BC Group and commencement of employment with IPG.

Once the Court determines that joinder is permissible, it must consider not only the standard for amendment set forth in Rule 15(a) of the Federal Rules of Civil Procedure, but it must also assess the fundamental fairness of allowing joinder to divest jurisdiction. *See Graves v. Home Depot U.S.A.,* No. 12 Civ. 3816, 2013 WL 2357205, at *2 (S.D.N.Y. May 24, 2013); *AMBAC v. EMC Mortg. Corp.,* No. 08 Civ. 9464, 2011 WL 308276, at *3 (S.D.N.Y. Jan. 28, 2011); *Congilio v. The Andersons, Inc.,* No. 03-CV-153, 2004 WL 1228393, at *4 (W.D.N.Y. June 3, 2004), *citing Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) ("The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment.").

Fed. R. Civ. P. 15(a) provides that a party may amend a pleading by leave of court or by written consent of the adverse party. Leave to amend is to be "freely granted" unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); Fed. R. Civ. P.15(a). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach., Corp*., 310 F.3d 243, 258 (2d Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

<u>Aiding & Abetting Breach of Fiduciary Duty against IPG</u>

The proposed third cause of action alleges that "IPG knowingly and actively participated in [Mr.] Cook's breach of his duties of fidelity and loyalty by assisting [Mr.] Cook in diverting IPG's work away from BC Group and to [Mr.] Cook's new business." Dkt. #6-2, p.21. Specifically, BC Group alleges that IPG employee Lisa Hamilton negotiated the hourly rate IPG would pay Mr. Cook while Mr. Cook was still employed by BC Group. Dkt. #6-2, p.21.

IPG argues that BC Group's allegations of inducement or participation in the alleged breach of fiduciary duty are conclusory and fail to allege actual knowledge of Mr. Cook's duty pursuant to the agreement. Dkt. #9-2, pp.22-25. Specifically, IPG argues that BC Group's suggestion that IPG aided and abetted the solicitation of itself are nonsensical. Dkt. #9-2, pp.22-23.

BC Group responds that particularity is not required in pleading and that it's allegations are sufficient to support a finding that IPG knowingly induced or participated in Mr. Cook's breach of fiduciary duties to BC Group. Dkt. #11, pp.10-14. Specifically, BC Group responds that it has alleged that IPG actively participated and conspired with Mr. Cook to divert work away from BC Group and toward Mr. Cook's new company. Dkt. #11, p.14.

The elements of a claim for inducing or participating in a breach of fiduciary duty in New York are: (1) breach by a fiduciary of obligations to another; (2) knowing inducement or participation in that breach; and (3) damages. *S&K Sales, Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987). Thus, "[a]nyone who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que* trust." *Id.* at 848, *quoting Wechsler v. Bowman*, 285 N.Y. 284, 291 (1941). "Constructive knowledge of the breach of fiduciary

duty by another is legally insufficient to impose aiding and abetting liability;" there must be an allegation that IPG "had actual knowledge of the breach of duty." *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003). "Under New York law, an employee is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency of trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003).

BC Group has plausibly alleged that as an employee of BC Group, Mr. Cook owed BC Group a fiduciary duty to "give his undivided and unqualified loyalty to BC Group and to not act in any manner contrary to BC Group's interests" but that Mr. Cook breached his duty by, *inter alia*, creating a competing business, soliciting IPG while employed by BC Group and, ultimately, diverting IPG's business away from BC Group toward his consulting company, Moonstone. Dkt. #6-2, pp.18-19. Moreover, BC Group has plausibly alleged that while Mr. Cook remained employed by BC Group and engaged in providing consulting services to IPG, IPG negotiated with Mr. Cook to divert IPG's business away from BC Group. Dkt. #6-2, ¶¶ 74-85. This is sufficient to state a plausible claim of aiding and abetting a breach of fiduciary duty against IPG.

Unfair Competition -

Misappropriation of Trade Secrets against Mr. Cook & IPG

The proposed fourth cause of action alleges that IPG hired Mr. Cook at a lower hourly rate than IPG was paying BC Group with the knowledge that Mr. Cook was in possession of confidential, trade secret information from BC Group regarding IPG's Khalix system and how to tailor that system to meet IPG's business needs. Dkt. #6-2, pp.22-24.

Mr. Cook and IPG argue that plaintiff's claim for unfair competition fails to plausibly allege a trade secret misappropriated by Mr. Cook or to plausibly allege that

Mr. Cook is a competitor to BC Group.  Dkt. #9-2, pp.26-27.  Specifically, they argue that because IPG obviously knows its own needs and preferences and its employees worked with BC Group, this information cannot be a trade secret of BC Group.  Dkt. #9-2, p.26 & Dkt. #12, p.5.

BC Group responds that IPG did not possess the trade secret information Mr. Cook absconded with, which is why it needed to hire and retain BC Group, and that absent BC Group's trade secrets, it would have cost IPG a significant sum to hire new consultants to learn to support the IPG's Khalix software system.  Dkt. #11, pp.15-17.  BC Group also notes that Mr. Cook acknowledged the existence of BC Group's trade secrets when he signed the employment contract.  Dkt. #11, p.25.

"A plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence or duty, or as a result of discovery by improper means." *Integrated Cash Mgmt. Serv. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990).  In New York, this tort generally applies to cases where former employees utilize confidential information in the form of trade secrets.  *Watts v. Jackson Hewitt Tax Serv., Inc.*, 675 F. Supp.2d 274, 278 (E.D.N.Y. 2009).  "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  *Id., citing* Restatement of Torts, § 757, comment b.  Moreover, a "trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectible secret."  *Id.* at 174.  "Discovery by improper means" has been defined in terms of "industrial espionage," for example, "burglary, wire-tapping, and bribery."  *Id.* at 280, *citing Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 487 (1974).

Plaintiff has plausibly alleged that BC Group possesses a trade secret, *e.g.*, information that affords BC Group a competitive advantage over other Khalix consulting companies competing for IPG's business, and that Mr. Cook obtained that information during the course of his employment with BC Group and used it in breach of his agreement with BC Group. That is sufficient to state a claim against Mr. Cook. In contrast, plaintiff has failed to plausibly allege a misappropriation claim against IPG because BC Group does not allege that IPG obtained BC Group's alleged trade secrets in breach of any agreement with or duty to BC Group or through improper discovery of BC Group.

<u>Unfair Business Practices against Mr. Cook and IPG</u>

The proposed fifth cause of action alleges that Mr. Cook and IPG misappropriated BC Group's commercial advantage by engaging a scheme to hire Mr. Cook at a lower wage than IPG was paying BC Group. Dkt. #6-2, pp.24-25. In addition, the proposed fifth cause of action alleges that Mr. Cook sought to trade upon the accomplishments of BC Group by claiming on his website that Moonstoneworks had performed work which was actually performed by BC Group. Dkt. #6-2, p.25.

Mr. Cook and IPG argue that this is the same cause of action as the proposed fourth cause of action and should be dismissed for the reasons set forth above. Dkt. #9-2, p.27.

BC Group responds that its unfair competition claim is distinct from its misappropriation of trade secrets claim. Dkt. #11, p.19.

While it is true that the "labeling of an action as 'unfair business practices' rather than 'unfair competition' does not change the substance of the claim," *Louis Capital Mkts, L.P. v. Refco Group Ltd.*, 9 Misc.3d 283, 288 (N.Y. Cty. 2005), it is also

true that New York recognizes five categories of unfair competition: (1) trade secrets; (2) trademark or trade name infringement;  (3) palming off; (4) misappropriation; and (5) false labeling or advertising. *See* N.Y. Pattern Jury Instructions 3:58 at p.584.  In other words, plaintiff can allege a cause of action for misappropriation even in the absence of a trade secret.  *See Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 102 (2d Cir. 1989) (because a claim of trademark infringement is but a part of the broader claim of unfair competition, claim would not be foreclosed if the mark is generic); *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979) (unfair competition encompasses broad range of unfair practices which may be generally described as a misappropriation of the skill, expenditures and labor of another), *cert. denied*, 445 U.S. 951 (1980).  Thus, plaintiff's proposed fifth cause of action against Mr. Cook states a plausible claim for unfair competition by misappropriation.  In addition, BC Group's allegation that Mr. Cook sought to trade upon the accomplishments of BC Group by claiming on his website that Moonstone had performed work which was actually performed by BC Group states a distinct claim of unfair competition against Mr. Cook.  *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) ("essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.").  Such allegations would not state a claim against IPG, however, as there is no allegation that IPG had access to or, in the case of the website, benefitted from, the information BC Group alleges was misappropriated.

<u>Permanent Injunction against Mr. Cook and IPG</u>

The proposed sixth cause of action seeks a permanent injunction enjoining Mr. Cook from working for IPG and enjoining IPG from hiring Mr. Cook in any capacity.  Dkt. #6-2, p.26.  In support of this request for relief, BC Group asserts that it will "suffer irreparable harm if Mr. Cook and IPG are allowed to use the confidential and

trade secret knowledge they usurped from BC Group to compete with BC Group." Dkt. #6-2, p.26.

Mr. Cook and IPG argue that an injunction enforcing a non-competition agreement is limited to the time period set forth in the agreement, which has already expired. Dkt. #9-2, pp.28-29. In any event, Mr. Cook argues that there are no allegations of continuing harm. Dkt. #9-2, pp.28-29.

BC Group responds that it has alleged the necessary elements to warrant the imposition of a permanent injunction against IPG and Mr. Cook. Dkt. #11, p.20.

BC Group has proffered no legal basis for extending injunctive relief beyond the terms set forth in the agreement, *to wit*, twelve months following the termination of his employment at BC Group, a term which has already expired. *See e.g., Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999) (enjoining former employee from working in the title insurance business and from appropriating former employer's corporate opportunities with its current or prospective customers for the period set forth in the non-compete agreement). Moreover, BC Group has proffered no legal basis for enjoining IPG from employing Mr. Cook. In any event, BC Group has failed to provide any reason to believe that monetary damages could not adequately compensate BC Group for any harm it may have sustained. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) ("For it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a[n] . . . injunction will not issue.").

<u>Tortious Interference with Contract against IPG</u>

The proposed ninth cause of action alleges upon information and belief that IPG was aware of the employment agreement between Mr. Cook and BC Group

and that IPG "assisted or encouraged" Mr. Cook to breach the confidentiality and non-solicitation provisions of that agreement.  Dkt. #6-2, p.28.

IPG argues that plaintiff has failed to plead that the alleged breach would not have occurred but for its actions. Dkt. #9-2, p.30.

BC Group responds that it has plausibly alleged that IPG induced Mr. Cook to breach the agreement by promising to employ Mr. Cook's company.  Dkt. #11, p.21.

Under New York law, the elements of tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom.  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006); *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007).  With respect to the third element, "[a] plaintiff must allege that the third party would not have breached the contract but for the activities of the defendant."  *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990), *cert. denied*, 499 U.S. 907 (1991).  Allegations that a defendant merely welcomed a proposed breach are insufficient.  *Cantor Fitzgeral Assocs. v. Tradition N. Am.*, 299 A.D.2d 204 (4th Dep't 2002), *lv denied*, 99 N.Y.2d 508 (2003).

Setting aside the issue of whether it is sufficient for plaintiff to allege IPG's knowledge of the agreement "upon information and belief," plaintiff's allegations that IPG "assisted or encouraged" Mr. Cook to breach the agreement fails to satisfy the element of intentional procurement.  Moreover, this cause of action is inconsistent with BC Group's factual allegation that Mr. Cook solicited IPG.

Fundamental Fairness

Having determined that BC Group has plausibly alleged that IPG aided and abetted Mr. Cook's breach of his duty of loyalty to BC Group by negotiating with Mr. Cook while he was employed with BC Group to divert IPG's consulting business away from BC Group toward Mr. Cook's business, the Court must now consider the fundamental fairness of allowing joinder to deny Mr. Cook his choice of forum.  In assessing fundamental fairness, the Court considers four factors: (1) any delay, and the reasons for such delay, in moving to amend following removal; (2) prejudice to the defendants; (3) likelihood of multiple litigation; and (4) plaintiff's motivation in moving to amend.  *Vanderzalm*, 875 F. Supp.2d at 184.

Delay

BC Group argues that it's motion is timely because it was brought less than a month after receipt of IPG's response to its subpoena, which provided factual support for BC Group's allegations of aiding and abetting Mr. Cook's breach of fiduciary duty and engaging in unfair competition.  Dkt. #6-1, p.3.  BC Group specifically cites to the August 21, 2012 e-mail between IPG's Director of Corporate Human Resources and Lisa Hamilton which it received in response to its subpoena of IPG in July of 2013, approximately one month prior to filing the motion to amend.  Dkt. #11, p.4.

IPG argues that BC Group has known the facts set forth in the proposed amended complaint prior to filing the original complaint and nearly a year before moving to amend.  Dkt. #9-2, pp.17-18.  IPG cites to BC Group's e-mail of December 5, 2012 accusing Mr. Cook of violating the terms of the agreement by returning to perform Khalix work for IPG "shortly after" leaving BC Group.  Dkt. #9-1, p. 63.

BC Group responds that while it was aware that Mr. Cook was working for IPG, it was not until it received the subpoena response that it realized that Mr. Cook

had solicited IPG before he left BC Group's employ and that IPG actively assisted Mr. Cook in the breach of his duties to BC Group.  Dkt. #11, pp.4-5.

The relevant time frame for assessing delay in seeking amendment is from the date of removal.  *Vanderzalm*, 875 F. Supp.2d at 184.  In the instant case, the Notice of Removal was filed on June 13, 2013 and the Motion to Amend was filed on August 13, 2013.  This does not constitute a sufficient delay to weigh against joinder, particularly in light of the receipt of subpoenaed documents approximately one month prior to the filing of the motion to amend.  *Id.*

Prejudice

Mr. Cook and IPG argue that there is no prejudice to the denial of the motion to amend because BC Group's claims lack merit and, to the extent the claims against IPG may state a claim, such claims can be brought in a separate action in state court.  Dkt. #9-2, pp.18-19.  Conversely, Mr. Cook argues that denying him a federal forum is prejudicial, particularly given the futility of BC Group's claims against IPG.  Dkt. #9-2, pp.19-20.

BC Group notes that the prejudice to be considered by the Court is prejudice to the defendant if the motion to amend is granted and notes that IPG has not offered any evidence of such prejudice.  Dkt. #11, p.5.

Discovery in this action is in its earliest stages - a case management order has yet to be issued - and Mr. Cook does not allege that remand would necessitate revision of his litigation strategy or otherwise prejudice his defense of this action.  *See Nazario v. Deere & Co.*, 295 F. Supp.2d 360, 364 (S.D.N.Y. 2003).  Accordingly, this factor does not weigh against remand.

### Multiple Litigation

IPG argues that BC Group is unlikely to engage in multiple litigation because its claims against it are merely an offshoot of its claims against BC Group and lack merit. Dkt. #9-2, pp.18-19.

BC Group argues that absent amendment of this complaint, it will likely file suit against IPG and Mr. Cook in New York State Supreme Court, Erie County, to pursue the claims set forth in the proposed amended complaint, resulting in a waste of resources by both the parties and the courts and risking inconsistent verdicts. Dkt. #6-1, p.4 & Dkt. #11, p.8. Moreover, BC Group argues that IPG, a multinational company, is attempting to frustrate BC Group by forcing it to litigate its claims against Mr. Cook, who is likely being indemnified by IPG, in one forum and its claims against IPG in another forum. Dkt. #11, p.8.

Having determined that BC Group has stated a claim against IPG for aiding and abetting a breach of fiduciary duty, BC Group has demonstrated a risk of multiple litigation. Where, as here, the claims in the proposed amended complaint arise from the same transaction and are governed by the same state law, courts generally find that this factor weighs in favor of remand in the interest of judicial economy. *Vanderzalm*, 875 F. Supp.2d at 186.

### Motivation

BC Group argues that its proposed amended complaint is brought in good faith and presents cognizable claims. Dkt. #6-1, p.4 & Dkt. #11, p.6.

IPG argues that BC Group's knowledge that Mr. Cook was working for IPG prior to filing of the complaint demonstrates it's motivation is to destroy diversity. Dkt. #9-2, p.16.

Absent reason to believe that the sole motive for joinder is a desire to destroy diversity jurisdiction, remand is warranted.  *Vanderzalm*, 875 F. Supp.2d at 187; *Rosenthal v. Life Fitness Co.*, 977 F. Supp. 597, 601 (E.D.N.Y. 1997).  As there is no evidence of fraudulent joinder or other improper motivation in the decision to seek joinder, this factor does not weigh against remand.

## **CONCLUSION**

For the reasons set forth above, it is recommended that plaintiff's motion to amend its complaint to add IPG as a defendant (Dkt. #6), be granted in part and that this matter be remanded to the New York State Court, County of Erie, for lack of diversity jurisdiction.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>  *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**   **Buffalo, New York**
            **February 27, 2014**

    *H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**